UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

PHYLLIS A. ALLEYNE,

Plaintiff,

v.

NAACP LEGAL DEFENSE AND EDUCATIONAL
FUND, INC.,

Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
14-CV-6675 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Phyllis A. Alleyne, appearing *pro se*, commenced the above-captioned action on

November 7, 2014 against Defendant NAACP Legal Defense and Educational Fund, Inc., her

former employer.  Plaintiff asserts claims of discrimination, retaliation and hostile work

environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*

("ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*

("ADA").  (Compl. 1, 3, Docket Entry No. 1.)  Plaintiff also appears to assert a claim pursuant to

the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA").  (Compl. 3–4.)  Plaintiff seeks

injunctive relief, damages, pre-judgment interest, costs and attorney's fees.  (*Id.* at 5.)  The Court

grants Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and,

for the reasons set forth below, dismisses the Complaint pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii).  Plaintiff is granted leave to file an amended complaint within thirty (30)

days of the date of this Memorandum and Order.

## I. Background

The following facts are taken from the Complaint and are accepted as true. Plaintiff was born in 1956 and is a female who describes her religion as "Christian / Roman Catholic." (Compl. ¶ 7.) Plaintiff alleges that she was employed by Defendant and, from January of 2011 to March of 2013, Defendant discriminated against Plaintiff on the basis of her gender, color, religion, disability and age.[1] (*Id.* ¶¶ 4–5, 7.) Plaintiff also alleges that, throughout the time she was employed by Defendant, "it was always a hostile work environment." (*Id.* ¶ 5.) Plaintiff further asserts that her supervisor, Ryan Haygood, "inferred that [she] had OCD." (*Id.* ¶ 7.) Plaintiff was "treated differently," "harassed repeatedly," and "bullied" by two of her co-workers. (*Id.* ¶ 8.) Plaintiff "filed a complaint against" her two co-workers and, as a result, she was "written up, unfairly reviewed, [and] denied a full bonus and equal pay for equal work." (*Id.*) Plaintiff also filed a grievance through her union, Local 107, and was "further harassed and bullied" by Haygood "because of [her] age" and her "unwillingness to participate in certain activities or conversations, etc." (*Id.*) Plaintiff was subsequently fired.[2] (*Id.*)

To the best of Plaintiff's recollection, in January of 2014, she filed a charge with the Equal Employment Opportunity Commission ("EEOC") regarding Defendant's discriminatory

---

[1] These allegations are set forth in response to a section of the form Complaint that prompts claimants to indicate the bases on which they were discriminated against by checking a series of boxes. (Compl. ¶ 7.) Plaintiff checked the boxes corresponding to discrimination on the basis of gender, religion, color, age and disability. (*Id.*) Plaintiff described her gender as female and indicated that her religion is "Christian / Roman Catholic," and that she was more than forty-years old at the time of Defendant's discriminatory conduct. (*Id.*) As to her disability, Plaintiff stated that her supervisor "inferred that [she] had OCD." (*Id.*) Finally, Plaintiff wrote "culture" next to the box corresponding to discrimination on the basis of color. (*Id.*)

[2] Plaintiff does not state when she was terminated.

conduct,[3] and the EEOC issued a Notice of Right to Sue ("Right-to-Sue Letter") which Plaintiff received on August 21, 2014.[4]  (*Id.* ¶¶ 10, 12.)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation and internal quotation marks omitted); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (same); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").  Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

Analyzing whether a plaintiff has sufficiently alleged an employment discrimination

---

[3]  The Complaint does not specify the types of discrimination Plaintiff alleged in the charge she filed with the EEOC.

[4]  The Right-to-Sue Letter is not attached to the Complaint.

claim requires reference not only to the pleading standard discussed above, but also to the three-stage, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)) (discussing burden-shifting); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–55 (1981)). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 506; *see also Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 (2d Cir. 2013); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). A plaintiff's burden at this stage is "minimal." *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 506). If a plaintiff meets her burden at this stage, a "temporary presumption" of discrimination arises, and the burden shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for the challenged conduct. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn*, 795 F.3d at 307, 311). If the defendant-employer articulates such a reason, the burden shifts back to the plaintiff-employee to show that the defendant-employer's reason was pretext. *Id.* at 83.

At the pleadings stage, a plaintiff does not need to prove discrimination, or even allege facts establishing every element of the *McDonnell Douglas prima facie* case, but the facts alleged must give "plausible support to the reduced requirements" of the *prima facie* case. *Littlejohn*, 795 F.3d at 311; *see Dawson v. N.Y.C. Transit Auth.*, --- F. App'x ---, ---, 2015 WL 5438790, at *1–2 (2d Cir. Sept. 16, 2015); *Vega*, 801 F.3d at 84; *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to

survive a motion to dismiss." (second alteration in original) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))). Thus, a plaintiff need only plead facts sufficient to give "plausible support" to plaintiff's "minimal" initial burden, which is governed by the statute under which she brings her claims. *Vega*, 801 F.3d at 84 (quoting *Littlejohn*, 795 F.3d at 307, 312).

### b. Discrimination claims

Plaintiff alleges that Defendant discriminated against her on the basis of her gender, color, religion and age in violation of Title VII and the ADEA. (Compl. 1, ¶ 7.) Plaintiff also appears to allege discrimination on the basis of a perceived disability. For purposes of analyzing the sufficiency of Plaintiff's claims, the Court assumes Plaintiff intended to assert a discrimination claim pursuant to the ADA.[5]

### i. Title VII

A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against [her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision," which can be shown "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 86–87. In other words, "absent direct evidence of discrimination," to survive a motion to dismiss a claim of employment discrimination in violation of Title VII, a plaintiff must plausibly allege facts that would support a finding that she suffered an adverse employment action and "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d

---

[5] Plaintiff did not check the box on the first page of the form Complaint indicating that she is bringing a claim under the ADA. (Compl. 1.) However, in a subsequent portion of the Complaint, Plaintiff indicated that Defendant discriminated against her on the basis of disability and specified that her supervisor "inferred that [she] had OCD." (*Id.* ¶ 7.)

at 311; *Dechberry v. N.Y.C. Fire Dep't*, No. 14-CV-2130, 2015 WL 4878460, at *14 (E.D.N.Y. Aug. 14, 2015).

### 1. Protected group

Plaintiff sufficiently alleges that she is the member of two groups protected under Title VII as the Complaint indicates that Plaintiff is both a woman and a practicing Catholic. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting employment discrimination on the basis of either sex or religion). Plaintiff has not, however, sufficiently alleged that she is the member of a protected group based on color as "culture" is the only explanation Plaintiff provided as to her color.[6] (Compl. ¶ 7.)

### 2. Adverse employment action

Plaintiff alleges that she was terminated and subjected to discriminatory conduct involving her "salary / bonus / compensation" and that she was "denied a full bonus and equal pay for equal work."[7] (Compl. ¶¶ 4, 8.) An "adverse employment action" means "a materially adverse change in the terms and conditions of employment" and includes "termination of

---

[6] As noted above, the Complaint also suggests that Plaintiff intended to allege discrimination on the basis of color. To the extent Plaintiff intends to allege discrimination on this basis, Plaintiff should provide additional details to explain her reference to "culture" written next to the box on the form Complaint corresponding to discrimination on the basis of color. (*See* Compl. ¶ 7.)

[7] The Complaint is not clear as to whether the allegations regarding Plaintiff's salary and bonus are alleged in support of her retaliation claims only or are, instead, alleged in support of both Plaintiff's retaliation and discrimination claims. The foregoing allegations are, in part, set forth in response to a section of the form Complaint that prompts claimants to indicate the nature of the discriminatory conduct of which they complain by checking off applicable items in a list comprised of the following entries: failure to hire, termination, failure to promote, failure to accommodate a disability, unequal terms and conditions of employment, retaliation, and "other acts" — which claimants are directed to specify. (Compl. ¶ 4.) In completing this section, Plaintiff checked, among other items, "other acts" and specified "salary / bonus / compensation." (*Id.*) As such, Plaintiff appears to allege decreased bonus and pay as adverse actions in support of both her discrimination and retaliation claims.

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citations omitted).

Here, Plaintiff has sufficiently alleged an adverse employment action for purposes of her Title VII discrimination claim as Plaintiff alleges that Defendant terminated her employment. (Compl. ¶¶ 4, 8); *see Robinson v. Dibble*, 613 F. App'x 9, 12 (2d Cir. 2015) (noting that plaintiff's termination constituted "adverse employment action"). While Plaintiff alleges few details regarding her salary and bonus, the Court assumes for purposes of the current analysis that Defendant's alleged denial of "a full bonus and equal pay for equal work" constitute adverse actions. *See Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 437, 440 (S.D.N.Y. 2014) (holding that plaintiffs who alleged gender-based discrimination sufficiently alleged Title VII disparate treatment and impact claims that challenged method by which defendants set base pay and bonuses); *Ferrand v. Credit Lyonnais*, No. 02-CV-5191, 2003 WL 22251313, at *4 (S.D.N.Y. Sept. 30, 2003) (accepting plaintiff's assertion that her "much decreased bonus compensation" constituted an adverse employment action), *aff'd*, 110 F. App'x 160 (2d Cir. 2004).

### 3. Inference of discrimination

Plaintiff does not allege any direct evidence of discrimination on the basis of her gender or religion. Therefore the Court focuses on whether the allegations in the Complaint support a "plausible inference of discrimination." *See Vega*, 801 F.3d at 87.

Whether facts give rise to a plausible inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Howard v. MTA Metro-N.*

*Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)); *see also Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *6 (E.D.N.Y. July 30, 2013) (setting forth same standard and discussing circumstances from which an inference of discrimination can be drawn). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Remarks made by coworkers may also be probative of discriminatory intent, depending on the particular circumstances under which the comments were made. *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (outlining four factors district courts in this circuit routinely consider in evaluating the probative value of such remarks, including (1) the identity and position of the individual making the remark, (2) the timing of the remark in relation to the employment decision, (3) the content of the remark, and (4) the context in which it was made); *Mesias v. Cravath, Swaine & Moore LLP*, --- F. Supp. 3d ---, ---, 2015 WL 2069419, at *6 (S.D.N.Y. May 4, 2015) ("Remarks may raise an inference of discrimination if there is a nexus between the remarks and an adverse employment decision." (citing *Zhang v. Barr Labs., Inc.*, No. 98-CV-5717, 2000 WL 565185, at *4 (S.D.N.Y. May 8, 2000))).

Here, Plaintiff alleges that she was "treated differently" and "harassed repeatedly at work," "bullied by two co-workers" and "bullied by [her] supervisor Ryan Haygood because of [her] . . . unwillingness to participate in certain activities or conversations." (Compl. ¶ 8.) Plaintiff does not allege any facts regarding the nature of the bullying to which she was subjected

or the manner in which she was treated differently from other employees.  Nor does Plaintiff allege any facts that support a plausible inference that Plaintiff was treated differently, harassed or bullied because of her gender or religion.[8]  As such, Plaintiff has not alleged facts sufficient to support a plausible inference of discrimination and has not plausibly alleged that her gender or religion were motivating factors in her termination or in Defendant's decision to deny her a full bonus and equal pay.  *See Khaleel v. Swissport USA, Inc.*, No. 15-CV-4880, 2015 WL 5307733, at *2 (E.D.N.Y. Sept. 10, 2015) (dismissing discrimination claim pursuant to Title VII because "[e]ven under the most liberal interpretation of [plaintiff's] complaint, he provides no facts that could possibly connect or link any adverse employment action to a protected status"); *Haynes v. Capital One Bank*, No. 14-CV-6551, 2015 WL 2213726, at *2 (E.D.N.Y. May 8, 2015) (dismissing plaintiff's discrimination claim pursuant to Title VII because, aside from alleging a single "ambiguous remark made by [plaintiff's] branch manager, in which [the manager] stated that 'this is why I don't hire her kind,'" plaintiff failed to allege "facts that suggest her termination or any other adverse employment actions were connected to her race"); *Frederick v. United Bhd. of Carpenters & Joiners of Am. (UBCJA) Local 926*, No. 12-CV-2387, 2014 WL 5783045, at *3 (E.D.N.Y. Nov. 6, 2014) (dismissing Title VII discrimination claim because plaintiff alleged no facts suggesting she was denied promotion for reasons relating to her race); *Cabey v. Atria Senior Living*, No. 13-CV-3612, 2014 WL 794279, at *2 (E.D.N.Y. Feb. 26, 2014) (dismissing Title VII discrimination claim where, although complaint described various disagreements between plaintiff and his co-workers, none of the disagreements were alleged to

---

[8]  While Plaintiff alleges that she was bullied by her supervisor Ryan Haygood "because of" her "unwillingness to participate in certain activities or conversations," (Compl. ¶ 8), Plaintiff does not specify the nature of the activities or conversations she was unwilling to participate in or otherwise elaborate on the activities or conversations.

have concerned plaintiff's protected status).

Plaintiff's discrimination claim pursuant to Title VII is therefore dismissed without prejudice. Should Plaintiff wish to pursue this claim, she is directed to file an amended complaint that sets forth facts sufficient to support a plausible inference that gender or religion was a motivating factor in Plaintiff's termination or the amounts of her bonus or salary.[9]

### ii. ADEA

Courts analyzing claims of employment discrimination under the ADEA apply the three-stage *McDonnell Douglas* burden-shifting framework. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (applying *McDonnell Douglas* framework to ADEA age discrimination claim). To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate: "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 107. To state a claim pursuant to the ADEA a plaintiff must allege that age was the "but for" cause of the employer's adverse action, and not merely that it was a motivating factor. *See Vega*, 801 F.3d at 86 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)) (noting that a plaintiff alleging age discrimination must allege that age was the but-for cause of the adverse action).

As with Title VII discrimination claims, while a plaintiff need not specifically plead each and every element of a prima facie case of discrimination to survive a motion to dismiss, the standard provides a framework for analyzing whether the plaintiff's claims for relief are

---

[9] Should Plaintiff wish to pursue a claim for discrimination on the basis of color, she is further directed to file an amended complaint that explains what her "culture" is such that the Court may conclude she is protected against color-based discrimination under Title VII.

plausible. *Dechberry*, 2015 WL 4878460, at *16. At the pleading stage, a plaintiff must

plausibly allege that (1) her employer took an adverse employment action against her, and (2) her

age "was the 'but-for' cause of the employer's adverse action." *See Vega*, 801 F.3d at 86; *see*

*also Ingrassia v. Health & Hosp. Corp.*, No. 14-CV-1900, 2015 WL 5229444, at *6 (E.D.N.Y.

Sept. 8, 2015) ("*Vega* . . . require[s] a plaintiff alleging an ADEA violation to plausibly allege

that the employer took adverse action against her and that age was the 'but for' cause in the

employment decision.").

### 1. Protected group

Plaintiff alleges that she was born in 1956 and was subjected to discriminatory conduct

from January of 2011 to March of 2013 such that she was over the age of forty at all relevant

times. (Compl. ¶¶ 5, 7.) Plaintiff therefore sufficiently alleges that she was a member of the age

group protected under the ADEA at the time of the alleged discrimination. *See* 29 U.S.C.

§ 631(a).

### 2. Adverse employment action

Plaintiff alleges that she was terminated and subjected to discriminatory conduct

involving her "salary / bonus / compensation" and that she was "denied a full bonus and equal

pay for equal work." (Compl. ¶¶ 4, 8.) Plaintiff sufficiently alleges adverse employment

actions. Like Title VII, the ADEA precludes employers from discharging employees or setting

compensation on the basis of age. *See* 29 U.S.C. § 623(a) (providing that, "[i]t shall be unlawful

for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise

discriminate against any individual with respect to his compensation, . . . because of such

individual's age").

### 3. Inference of discrimination

Plaintiff fails to allege any facts that give rise to a plausible inference of discrimination and, instead, asserts only that her age and "unwillingness to participate in certain activities or conversations" led to her termination which is not sufficient. *See Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 30 F. Supp. 3d 174, 180 (E.D.N.Y. 2014) (holding that plaintiff failed to allege sufficient facts to support conclusion that, but for her age, she would have been hired for tenure track position with school district, and noting that complaint failed to allege any details about the identity or ages of the individuals school district hired instead of plaintiff); *McManamon v. Shinseki*, No. 11-CV-7610, 2013 WL 3466863, at *7 (E.D.N.Y. Mar. 28, 2013) (dismissing plaintiff's ADEA discrimination claim because amended complaint alleged no facts to support a causal connection between defendant's rejection of plaintiff's application for information technology specialist position and plaintiff's age). Plaintiff therefore fails to plausibly allege that her age was the but-for cause of Plaintiff's termination or the amount of her salary or bonus.

Plaintiff's discrimination claim pursuant to the ADEA is therefore dismissed without prejudice. Should Plaintiff wish to pursue this claim, she is directed to file an amended complaint that sets forth facts sufficient to support a plausible inference that Plaintiff's age was the but-for cause of Defendant's decision to terminate her or as to the amounts of her bonus or salary.

### iii. ADA

Under the ADA, covered employers may not "discriminate against a qualified individual on the basis of disability" with regard to employment decisions. *See* 42 U.S.C. § 12112. Under the *McDonnell Douglas* burden-shifting framework, to establish a *prima facie* case of

discrimination under the ADA, a plaintiff must allege that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010) (citations omitted); *see also Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 48–49 (2d Cir. 2014) (quoting *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013)) (outlining *prima facie* test under the ADA).

As with Title VII discrimination claims, while a plaintiff need not specifically plead each and every element of a prima facie case of discrimination to survive a motion to dismiss, the standard provides a framework for analyzing whether the plaintiff's claims for relief are plausible. *Dechberry*, 2015 WL 4878460, at *16. At the pleading stage, to state a claim of employment discrimination under the ADA, a plaintiff must plausibly allege that (1) her employer took an adverse action against her, and (2) the action was taken *because of* her disability or perceived disability. *See Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) ("To state a claim for discrimination under the ADA, a plaintiff must allege facts which plausibly suggest, inter alia, that she 'suffered [an] adverse employment action because of [her] disability.'" (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001))).

### 1. Adverse employment action

Plaintiff alleges that she was terminated and subjected to discriminatory conduct involving her "salary / bonus / compensation" and that she was "denied a full bonus and equal pay for equal work." (Compl. ¶¶ 4, 8.) Plaintiff has sufficiently alleged adverse employment actions under the ADA. Like Title VII and the ADEA, the ADA precludes employers from

discharging employees or setting their compensation on the basis of their disability or perceived disability. *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees, [or] employee compensation . . . .").

### 2. Disability

As Plaintiff states that her supervisor "inferred that [she] had OCD,"[10] she appears to allege that she was regarded as having a disability. (Compl. ¶ 7.) The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include standing, lifting, bending, speaking and working. *Id.* § 12102(2)(A). Under the EEOC's regulations, "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA' and 'is not meant to be a demanding standard.'" *Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i)). As a result, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Even absent an actual or recorded disability, an employee is still disabled if the employee is "regarded as having such an impairment." 42 U.S.C. § 12102. Prior to the ADA's 2008 amendment, a plaintiff who was "regarded as" disabled had to show that the employer regarded the plaintiff as having an impairment that substantially limited a major life activity. *See Hilton v.*

---

[10] Plaintiff does not define "OCD" but the Court understands Plaintiff to be referring to Obsessive Compulsive Disorder.

*Wright*, 673 F.3d 120, 128–29 (2d Cir. 2012) (discussing pre-amendment standard for assessing

"regarded as" claims).  However, as amended, an employee need not show that the employer

perceived both the impairment and that it substantially limited a major life activity; instead:

> An individual meets the requirement of "being regarded as having
> such an impairment" if the individual establishes that he or she has
> been subjected to an action prohibited under this chapter because of
> an actual or perceived physical or mental impairment whether or not
> the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A); *see also Hilton*, 673 F.3d at 129 (finding that under the amended

ADA, employee only had to show that his employer "regarded him as having a mental or

physical impairment . . . [and] was not required to present evidence of how or to what degree

[the employer] believed the impairment affected him").  "Whether an individual is 'regarded as'

having a disability 'turns on the employer's perception of the employee' and is therefore 'a

question of intent, not whether the employee has a disability.'"  *Simmons v. N.Y.C. Transit Auth.*,

340 F. App'x 24, 27 (2d Cir. 2009) (quoting *Francis v. City of Meriden*, 129 F.3d 281, 284 (2d

Cir. 1997)).  However, "the 'regarded as' definition of disability does not apply to impairments

that are both 'transitory and minor,'" *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588,

606 (E.D.N.Y. 2013) (quoting 42 U.S.C. § 12102(3)(B)), which the statute defines as

impairments with "an actual or expected duration of 6 months or less," 42 U.S.C. § 12102(3)(B).

Among the "physical or mental impairment[s]" subject to protection under the ADA are "mental

or psychological disorder[s]," 29 C.F.R. § 1630.2(h)(2), including obsessive compulsive

disorder, *id.* § 1630.2(j)(3)(iii) (stating that "it should easily be concluded that" impairments

including "obsessive compulsive disorder . . . substantially limit brain function").

Plaintiff has therefore sufficiently alleged that she was regarded as having a disability

protected under the ADA.  *See Hilton*, 673 F.3d at 129 (reviewing grant of summary judgment in

favor of defendants on plaintiff's discrimination claim under ADA and concluding that plaintiff

established fact issue as to whether defendants regarded him as having impairment protected under ADA because plaintiff claimed defendants regarded him as suffering from drug addiction and regulations promulgated by Department of Justice included "drug addiction" among conditions qualifying as "physical or mental impairment").

### 3. Inference of discrimination

Plaintiff fails to allege any facts that give rise to a plausible inference that Defendant took an adverse action against Plaintiff because she was perceived to have OCD. Aside from alleging that her supervisor inferred that she had OCD, Plaintiff does not set forth any further allegations regarding her perceived OCD or allege that any discriminatory action was taken as a result of her perceived disability. Plaintiff has therefore failed to plausibly allege that Defendant terminated her or reduced her salary or bonus because she was perceived to have OCD. *Cf. Rodriguez v. Verizon Telecom*, No. 13-CV-6969, 2014 WL 6807834, at *6 (S.D.N.Y. Dec. 3, 2014) (finding plaintiff's discrimination claim pursuant to the ADA was sufficiently pled because plaintiff alleged he was disabled due to drug and alcohol addiction and that defendant-employer wrongly accused him of being under the influence shortly before he was terminated).

Plaintiff's discrimination claim pursuant to the ADA is therefore dismissed without prejudice. Should Plaintiff wish to pursue this claim, she is directed to file an amended complaint stating sufficient facts to support a plausible inference that Defendant's decisions as to her termination, bonus or salary were due to her perceived impairment.

### c. Retaliation claims — Title VII, ADEA and ADA

Plaintiff alleges that, after "fil[ing] a complaint against" two co-workers who bullied her, she was "written up, unfairly reviewed, and denied a full bonus and equal pay for equal work." (Compl. ¶ 8.) Plaintiff also alleges that she filed a grievance through her union and was

thereafter "further harassed and bullied by [her] supervisor Ryan Haygood" and that she was ultimately fired. (*Id.*) As such, Plaintiff appears to assert retaliation claims pursuant to Title VII, the ADEA or the ADA.[11]

All three statutes contain similar anti-retaliation provisions. *See* 42 U.S.C. § 2000e-(3)(a) (providing that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" under Title VII); 29 U.S.C. § 623(d) (providing that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful" under the ADEA); 42 U.S.C. § 12203(a) (providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful" under the ADA). Retaliation claims pursuant to all three statutes are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Littlejohn*, 795 F.3d at 315 (Title VII); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167–68 (2d Cir. 2014) (ADEA); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (ADA). To establish a *prima facie* case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

As with other claims analyzed under the *McDonnell Douglas* framework, at the pleadings stage the allegations need only give "plausible support to the reduced prima facie

---

[11] As is discussed in greater detail below, because Plaintiff does not allege any facts as to the substance of the complaint she filed against her co-workers or the grievance she filed through her union, it is not clear from the Complaint whether Plaintiff alleges that she engaged in activity protected under Title VII, the ADEA or the ADA.

requirements . . . ." *Id.* "Thus, for a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. To sufficiently allege that a defendant-employer took an adverse employment action "because" a plaintiff opposed an unlawful employment practice, a plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* In the retaliation context, but-for causation does not require that retaliation "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* at 91 (quoting *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013)).

### i. Protected activity

Plaintiff alleges that she filed a complaint, presumably with Defendant, regarding two of her co-workers and that she filed a grievance through her union. (Compl. ¶ 8.) Filing either a formal or informal complaint challenging discrimination is considered a protected activity for purposes of retaliation claims under Title VII, the ADEA and the ADA. *See Gregory v. Daly*, 243 F.3d 687, 700–01 (2d Cir. 2001) ("[Title VII] protects employees . . . in the making of informal protests of discrimination, including making complaints to management, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." (internal quotation marks and citations omitted)); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 242 (2d Cir. 2007) (vacating dismissal of retaliation claims under ADEA where plaintiff alleged she complained to employer about disparate treatment on basis of age and requested that her union file grievance on her behalf and that employer took adverse action in retaliation); *Treglia*, 313 F.3d at 717, 720 (finding that

plaintiff's complaints to his superior opposing disparate treatment due to plaintiff's disability were protected activities for purposes of retaliation claim under the ADA).

Although Plaintiff alleges that she filed a complaint and a grievance, she does not state any allegations as to the substance of either the complaint or the grievance and fails to plausibly allege that either the complaint or the grievance challenged an act or practice made unlawful by Title VII, the ADEA or the ADA.[12]  Plaintiff has therefore failed to allege any facts from which it can be inferred that Plaintiff engaged in a protected activity.  *See Haynes*, 2015 WL 2213726 at *2 (dismissing plaintiff's retaliation claim pursuant to Title VII because, although the plaintiff alleged that she complained to the defendant's human resources department, the complaint contained no description of what she told human resources and therefore failed to allege that she complained of conduct prohibited by Title VII).

## ii. Adverse employment action

In the retaliation context, an adverse employment action is one that a reasonable employee would find materially adverse, meaning it "could well dissuade a reasonable worker from making or supporting a charge of discrimination."[13]  *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57); *see also Fincher v. Depository Trust &*

---

[12]  To allege that she engaged in protected activity under Title VII, a plaintiff can allege that she either opposed discrimination, or made a charge or participated in a Title VII investigation or proceedings.  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  To sufficiently plead a protected activity based on having opposed discrimination, a plaintiff need not allege that she opposed conduct that actually violated the law, but that she "possessed a good faith, reasonable belief that the underlying employment practice was unlawful under the statute." *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)).

[13]  The scope of actions that may be materially adverse is broader for purposes of retaliation claims than for discrimination claims.  *See Hicks*, 593 F.3d at 165 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

*Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). In evaluating whether an action is materially adverse, "[c]ontext matters, as some actions may take on more or less significance depending on the context." *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (internal quotation marks omitted); *see also Hicks*, 593 F.3d at 165 (noting that even minor acts that would be immaterial in some situations may be material in others).

Plaintiff sufficiently alleges that she suffered an adverse employment action. Plaintiff was terminated, which is an adverse action for purposes of retaliation claims pursuant to Title VII, the ADEA and the ADA. *Patrolmen's Benevolent Ass'n of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002) (noting that termination constitutes adverse employment action for purposes of Title VII); *Hernandez v. Int'l Shoppes, LLC*, No. 13-CV-6615, 2015 WL 1858997, at *26, 31 (E.D.N.Y. Apr. 23, 2015) (noting that termination constitutes adverse employment action for purposes of retaliation claims pursuant to ADA); *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2014 WL 1259616, at *7, 12 (S.D.N.Y. Mar. 24, 2014) (noting that termination constitutes adverse employment action for purposes of retaliation claims pursuant to ADEA).

Plaintiff also alleges that she was "written up, [and] unfairly reviewed" and thus appears to allege that a negative review of some sort was prepared about her. (Compl. ¶ 8.) Because "a poor performance evaluation could very well deter a reasonable worker from complaining," *Vega*, 801 F.3d at 92, Plaintiff has also adequately alleged an adverse action based on having been "written up" and "unfairly reviewed."

### iii.   Causal connection

A causal connection in retaliation claims may be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other

circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *see also Vega*, 801 F.3d at 90 ("A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." (citing *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) and *Gorzynski*, 596 F.3d at 110)); *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 23 (2d Cir. 2015) ("Ordinarily, causation may be inferred from close temporal proximity.").  There is no bright line rule concerning the temporal proximity required to support a causal inference.  *See Gorzynski*, 596 F.3d at 110–11 ("Though [the Second Circuit] has not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship."); *Smith v. Town of Hempstead Dept. of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 457 (E.D.N.Y. 2011) ("With regard to the establishment of a *prima facie* case through temporal proximity, the Second Circuit has not drawn a bright line as to how closely an adverse employment action must follow protected activity to imply that retaliation has taken place." (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009))).

Plaintiff alleges that she filed a complaint and was then "written up, unfairly reviewed," and "denied a full bonus and equal pay for equal work," and asserts that she filed a grievance and was "subsequently" fired.  (Compl. ¶ 8.)  However, Plaintiff does not allege any facts as to the timing of these events.  In addition, aside from these statements, there are no other facts in the Complaint which suggest that Plaintiff suffered adverse employment conditions in retaliation for filing the complaint or grievance, even assuming that the complaint or grievance were protected

activities.  *See Treglia*, 313 F.3d at 720 ("In order to establish the last element of a prima facie case of retaliation, [the plaintiff] must show that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent.").

Plaintiff's retaliation claims are therefore dismissed without prejudice.  Should Plaintiff wish to pursue retaliation claims under Title VII, the ADEA or the ADA, she should file an amended complaint that alleges facts as to the substance of the complaint or grievance she filed, who Plaintiff filed the complaint with, and the dates and details of all relevant events as well as any facts that plausibly support the inference that Plaintiff was subjected to adverse employment actions in retaliation for having engaged in protected activity.

### d.  Hostile work environment claims

Plaintiff alleges that, throughout the time she was employed by Defendant, "it was always a hostile work environment," and she was "treated differently," "harassed repeatedly at work," "bullied by two co-workers" and "harassed and bullied by [her] supervisor Ryan Haygood."  (Compl. ¶¶ 5, 8.)  As such, Plaintiff appears to attempt to assert a hostile work environment claim pursuant to Title VII or the ADEA.

To plead that she was subjected to a hostile work environment in violation of Title VII or the ADEA, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (setting forth pleading standard for hostile work environment claim under Title VII); *see also Kassner*, 496 F.3d at 240 (setting forth same pleading standard for hostile work environment claims under ADEA).  "This standard has both objective and subjective components: the conduct complained of must be

severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). While Plaintiff asserts that she was harassed by her co-workers, she does not indicate *how* she was harassed or allege any specific conduct. Plaintiff therefore fails to state a hostile work environment claim. *See Dechberry*, 2015 WL 4878460 at *10 (dismissing hostile work environment claim because plaintiff failed to do more than make conclusory allegations and pointed to no specific conduct).

Plaintiff's hostile work environment claim is therefore dismissed without prejudice. Should Plaintiff wish to pursue a hostile work environment claim under Title VII or the ADEA, she should file an amended complaint alleging facts showing that she was subjected to a hostile work environment due to her gender, color, religion or age.

### e. Equal Pay Act claim

Plaintiff alleges she was subjected to discriminatory conduct involving her "salary / bonus / compensation," and claims she was "denied a full bonus and equal pay for equal work." (Compl. ¶¶ 4, 8.) As such, it appears that Plaintiff attempts to allege that Defendant violated her rights pursuant to the EPA.

The EPA "prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for 'equal work.'" *Chepak v. Metro. Hosp.*, 555 F. App'x 74, 76 (2d Cir. 2014) (quoting *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)). To establish a claim under the EPA, a plaintiff must make an initial showing that "[(1)] the employer pays different wages to employees of the opposite sex; [(2)] the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and [(3)] the jobs are performed under similar working conditions." *Id.* (quoting *Belfi*, 191 F.3d at 135). Plaintiff has

not alleged any facts to demonstrate that her pay was different from that of employees of the opposite sex who performed work requiring "equal skill, effort and responsibility" under "similar working conditions." *Id.*

Plaintiff's EPA claim is therefore dismissed without prejudice. Should Plaintiff wish to pursue a claim under the EPA, she should file an amended complaint that alleges facts that show Defendant discriminated against her on the basis of her sex by paying higher wages to employees of the opposite sex who performed equal work.

### III. Conclusion

Plaintiff is granted leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order. Plaintiff is advised that if she files an amended complaint, it will completely replace the original Complaint. Plaintiff should attach the EEOC Right-to-Sue Letter to the amended complaint, or explain why she is unable to do so. The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order. No summons shall issue at this time and all further proceedings shall be stayed for thirty days. If Plaintiff fails to amend her Complaint within thirty days as directed by this Memorandum and Order, the Court shall dismiss this Complaint for failure to state a claim on which relief may be granted. If submitted, the amended complaint will be reviewed for compliance with this Memorandum and Order and for sufficiency under 28 U.S.C. § 1915(e)(2)(B).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and *in forma pauperis* status is therefore denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: November 6, 2015
      Brooklyn, New York